IN THE UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

Eastern District of Kentucky
FILED
AUG 15 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**UNITED STATES OF AMERICA, and COMMONWEALTH OF KENTUCKY, ENVIRONMENTAL AND PUBLIC PROTECTION CABINET,**

**Plaintiffs,**

**v.**

**MID-VALLEY PIPELINE COMPANY, SUNOCO PIPELINE L.P., and SUN PIPE LINE COMPANY,**

**Defendants.**

**Civil Action No.** 06-cv-57 KKC

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Kentucky Environmental and Public Protection Cabinet ("the Cabinet"), which is an agency of the Commonwealth of Kentucky, through the undersigned attorneys, file this Complaint and allege as follows:

## I. NATURE OF THE ACTION

1. This civil action asserts claims for penalties and injunctive relief under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., and for penalties and costs under Kentucky Revised Statutes ("KRS") Chapter 224, and related Kentucky Administrative Regulations ("KAR"), against Mid-Valley Pipeline Company ("Mid-Valley") and Sunoco Pipeline L.P. ("SPLP"), with respect to the spill of 6,251 barrels of crude oil from the Mid-Valley Pipeline ("MVPL"), beginning on or about January 26, 2005 in Owen County, Kentucky into the Kentucky and Ohio Rivers, and adjoining shorelines. In addition, the United States asserts a CWA penalty claim against Mid-Valley and Sun Pipe Line Company ("Sun") for the spill of

1,500 barrels of crude oil from the MVPL beginning on November 24, 2000, in Claiborne Parish, Louisiana, into waters of the United States, including Campit Lake, and adjoining shorelines.

## II. JURISDICTION, AUTHORITY AND VENUE

2. This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 1321(n), and over the subject matter of the Cabinet's claims, pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction) because the Cabinet's claims are so related to the federal claims that they form part of the same case or controversy. The Court has personal jurisdiction over the Parties.

3. Authority to bring this action is vested in the United States Department of Justice by Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

4. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and ( c), and 1395(a), because the Kentucky spill occurred in, and Mid-Valley and SPLP conduct business in, this judicial district.

5. Notice of commencement of this action is being given to the State of Louisiana and the Commonwealth of Kentucky pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## III. DEFENDANTS

6. Defendant Mid-Valley Pipeline Company ("Mid-Valley") is a corporation organized and existing under the laws of the State of Ohio and licensed to do business in the State of Louisiana and the Commonwealth of Kentucky. Mid-Valley has owned the MVPL from its inception, in or about 1949-1950, through the present. The MVPL was constructed of 20 inch and 22 inch diameter steel pipe, mainly with a wall thickness of 0.25 inches, and is over 1,000 miles long. The MVPL runs from Longview, Texas to Lima, Ohio, and traverses the states of Louisiana, Arkansas, Mississippi, Tennessee, and Kentucky.

7. Defendant Sun Pipe Line Company ("Sun"), which was a corporation organized under the laws of the Commonwealth of Pennsylvania, operated the entire MVPL at times relevant to

the Complaint up until February 8, 2002. On information and belief, in March of 2002 Sun Pipe Line Company merged with Sunoco Texas Pipe Line Company and is now a corporation organized and existing under the laws of the State of Texas, under the name Sun Pipe Line Company.

8. Defendant Sunoco Pipeline L.P. ("SPLP") is a limited partnership organized and existing under the laws of the State of Texas. On February 8, 2002, SPLP took over operations of the entire MVPL from Sun and has operated the MVPL from February 8, 2002 to the present.

## IV. STATUTORY BACKGROUND

### A. FEDERAL AUTHORITY

#### Prohibition of Discharges

9. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, including oil, by any person, except as authorized by and in compliance with other sections of the CWA.

10. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

11. Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil into or upon the navigable waters of the United States and adjoining shorelines in such quantities as the President determines may be harmful to the public health or welfare or the environment of the United States. Section 311(a)(2) of the CWA defines "discharge" to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ," subject to certain specified exceptions not applicable here. 33 U.S.C. § 1321(a)(2).

12. Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA, acting through its delegated authority under Executive Order No. 11735, 38 Fed. Reg. 21243 (Aug. 7, 1973), has determined by regulation that the quantities of oil that may be harmful to the public health or welfare or the environment of the United States include discharges of oil that violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface

of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines. 40 C.F.R. § 110.3.

**Injunctive Relief**

13. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator of the EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which the Administrator is authorized to issue a compliance order under Section 309(a).

14. Section 309(a) of the CWA, 33 U.S.C. § 1319(a), authorizes the Administrator of the EPA to, inter alia, issue compliance orders for discharges of pollutants prohibited under Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

**Civil Penalties**

15. Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7), provides that:

> (A) Discharge, generally
> Any person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of [Section 311(b)(3) of the CWA], shall be subject to a civil penalty in an amount up to $25,000 per day of violation or an amount up to $1,000 per barrel of oil or unit of reportable quantity of hazardous substances discharged.

Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134), and 40 C.F.R. § 19.4, the above amounts have been adjusted upwards for inflation. For discharges occurring between January 30, 1997 and the present, the per barrel amount has been increased to $1,100. The alternative per day of violation maximum was increased to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004, and to $32,500 per day for each violation occurring after March 15, 2004. 40 C.F.R. § 19.4.

16. Pursuant to Section 311(s) of the CWA, 33 U.S.C. § 1321(s), and Pub.L. 101-380 § 4304, amounts received by the United States for actions under Section 311 shall be deposited in the "Oil Spill Liability Trust Fund" established under 26 U.S.C. § 9509 to, inter alia, address

future discharges and substantial threats of discharges of oil.

## B. STATE AUTHORITY

### Prohibition of Discharges

17. KRS 224.70-110 prohibits the discharge into any of the waters of the Commonwealth, any pollutant, or any substance that shall cause or contribute to the pollution of the waters of the Commonwealth in contravention of the standards adopted by the Cabinet or in contravention of any of the rules, regulations, permits, or orders of the Cabinet or in contravention of any of the provisions of KRS Chapter 224.

18. 401 KAR 5:031 Section 2(1)(b) prohibits the degradation of surface waters by substances that float as debris, scum, oil or other matter, to form a nuisance.

19. 401 KAR 5:031 Section 2(1)(d) prohibits the degradation of surface waters by substances that injure, are chronically or acutely toxic to or produce adverse physiological or behavioral responses in humans, animals, fish and other aquatic life.

### Requirement for Immediate Notification

20. KRS 224.01-400(11) states: "Any person possessing or controlling petroleum or a petroleum product as defined by KRS 224.60-115(15) shall, as soon as that person has knowledge of any release or threatened release, ... , in an amount of twenty-five (25) gallons or more in a twenty-four (24) hour period,..., or in contravention of Section 311 of the Federal Clean Water Act, immediately notify the Cabinet's twenty-four (24) hour environmental response line." 401 KAR 5:015 Section 2 requires immediate notification of the Division of Water by the most rapid means available whenever a spill or discharge occurs from a pipeline used to transport or store substances which would result in or contribute to the pollution of the waters.

### Civil Penalties

21. KRS 224.99-010 authorizes civil penalties not to exceed $25,000 per day for, inter alia, each violation of KRS 224.70-110, 224.01-400, and any administrative regulation promulgated pursuant thereto.

**Response Costs**

22. KRS 224.01-400(15) states that the Cabinet shall have the authority, power, and duty to recover from persons liable therefor for the benefit of the hazardous waste management fund, the Cabinet's actual and necessary costs expended in response to a threatened release, an environmental emergency, or a release of a hazardous substance that is reportable under this section.

## V. GENERAL ALLEGATIONS

### A. November 24, 2000 Louisiana Oil Spill by Owner Mid-Valley and Operator Sun

23. On or about November 24, 2000, in the vicinity of Haynesville, Louisiana in Claiborne Parish, a 20 inch diameter segment of the MVPL that runs from Haynesville, Louisiana to Spearsville, Louisiana, ruptured, resulting in the unpermitted discharge of crude oil into an unnamed creek, into Campit Lake, and their adjoining shorelines. The immediate cause of the discharge was a failure in the pipeline caused by external stress corrosion-cracking. At least 1,500 barrels (63,000 gallons) of crude oil were discharged as a result of the rupture. Crude oil from the ruptured pipeline flowed through the unnamed creek for over a distance of approximately one mile, and into Campit Lake, a perennial lake. Waters from Campit Lake flow through an outlet into another unnamed creek. This unnamed creek flows for a straight-line distance of approximately 1.5 miles to a confluence with the Middle Fork Bayou D'Arbonne. The Middle Fork Bayou D'Arbonne flows into Bayou D'Arbonne Lake. Waters from Bayou D'Arbonne Lake flow through a spillway into the Bayou D'Arbonne. Bayou D'Arbonne flows into the Ouachita River. As a result of the discharge, animals including ducks and at least one beaver were oiled, and aquatic resources were polluted.

24. Campit Lake is "navigable waters" of the United States within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7), and CWA Section 311, 33 U.S.C. § 1321.

25. At the times relevant to this Complaint, the MVPL was an "onshore facility" within the meaning of CWA Section 311(a)(10), 33 U.S.C. § 1321(a)(10), and a "point source" within

the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

26. Beginning on November 24, 2000, Defendants Mid-Valley and Sun "discharged" 1,500 barrels of oil from the MVPL within the meaning of CWA Section 311(a)(2), 33 U.S.C. § 1321(a)(2), and CWA Section 502(16), 33 U.S.C. § 1362(16).

27. The crude oil that was discharged from the MVPL on or about November 24, 2000 is "oil" within the meaning of CWA Section 311(a)(1), 33 U.S.C. § 1321(a)(1), and a "pollutant" within the meaning of CWA Section 502(6), 33 U.S.C. § 1362(6).

28. The discharge of oil from the MVPL on or about November 24, 2000 was in a quantity "as may be harmful as determined by the President" within the meaning of CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3), because the discharge was sufficient to and did cause a sheen or discoloration of receiving waters within the meaning of 40 C.F.R. § 110.3.

29. Defendant Mid-Valley is an "owner . . . of . . . [an] onshore facility . . . from which oil . . . [was] discharged" within the meaning of CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), and a "person" within the meaning of CWA Sections 301(a), 311(a)(7) and 502(5), 33 U.S.C. §§ 1311(a), 1321(a)(7), 1362(5).

30. At the time of the November 24, 2000 spill, Defendant Sun was an "operator . . . of . . . [an] onshore facility . . . from which oil . . . [was] discharged" within the meaning of CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), and a "person" within the meaning of CWA Sections 301(a), 311(a)(7) and 502(5), 33 U.S.C. §§ 1311(a), 1321(a)(7), 1362(5).

### B. January 26, 2005 Kentucky Oil Spill by Owner Mid-Valley and Operator SPLP

31. In or about the early morning hours of January 26, 2005, in the vicinity of Perry Park, Owen County, Kentucky, a 22 inch diameter segment of the MVPL that runs from Simpsonville, Kentucky to Hebron, Kentucky, ruptured, resulting in the unpermitted discharge of crude oil into the Kentucky River, Ohio River, and their adjoining shorelines. The immediate cause of the discharge was a failure in the pipeline caused by a girth weld failure. At least 6,251 barrels

(262,542 gallons) of crude oil were discharged as a result of the rupture. The discharge created an oil plume extending at least 17 miles. As a result of the discharge, animals including beavers and Canadian geese were oiled, aquatic resources were polluted, and drinking water supplies were affected and treated.

32. The Kentucky River flows into the Ohio River. The Kentucky River and the Ohio River are "navigable waters" of the United States within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7), and CWA Section 311, 33 U.S.C. § 1321.

33. At the times relevant to this Complaint, the MVPL was an "onshore facility" within the meaning of CWA Section 311(a)(10), 33 U.S.C. § 1321(a)(10), and a "point source" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

34. Beginning on or about January 26, 2005, Defendants Mid-Valley and SPLP "discharged" 6,251 barrels of oil from the MVPL within the meaning of CWA Section 311(a)(2), 33 U.S.C. § 1321(a)(2), and CWA Section 502(16), 33 U.S.C. § 1362(16).

35. The crude oil that was discharged from the MVPL on or about January 26, 2005 is "oil" within the meaning of CWA Section 311(a)(1), 33 U.S.C. § 1321(a)(1), and a "pollutant" within the meaning of CWA Section 502(6), 33 U.S.C. § 1362(6).

36. The discharge of oil from the MVPL on or about January 26, 2005 was in a quantity "as may be harmful as determined by the President" within the meaning of CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3), because the discharge was sufficient to and did cause a sheen or discoloration of receiving waters within the meaning of 40 C.F.R. § 110.3.

37. Defendant Mid-Valley is an "owner . . . of [an]. . . onshore facility . . . from which oil . . . [was] discharged" within the meaning of CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), and a "person" within the meaning of CWA Sections 301(a), 311(a)(7) and 502(5), 33 U.S.C. §§ 1311(a), 1321(a)(7), 1362(5).

38. At the time of the January 26, 2005 spill and continuing to the present, Defendant SPLP has been an "operator . . . of [an]. . . onshore facility . . . from which oil . . . [was]

discharged" within the meaning of CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), and a "person" within the meaning of CWA Sections 301(a), 311(a)(7) and 502(5), 33 U.S.C. §§ 1311(a), 1321(a)(7), 1362(5).

39. Neither Mid-Valley nor SPLP notified the authorities immediately upon discovery of the spill, but rather hours later, notifying the Cabinet on January 26, 2005 at or about 7:09 a.m., and the National Response Center at or about 7:54 a.m.

## VI. CLAIMS

### First Claim for Relief
### Civil Penalties under Section 311(b) of the CWA for Louisiana Spill

40. Paragraphs 1 through 16, and Paragraphs 23 through 30, are realleged and incorporated herein by reference.

41. The discharge that occurred on or about November 24, 2000, as set forth in this Complaint, is a violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), by Defendants Mid-Valley and Sun. Mid-Valley as the owner, and Sun as the operator of the MVPL at the time of the spill, are each liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

### Second Claim for Relief
### Civil Penalties under Sections 311(b) of the CWA for Kentucky Spill

42. Paragraphs 1 through 16, and Paragraphs 31 through 39, are realleged and incorporated herein by reference.

43. The discharge that occurred on or about January 26, 2005, as set forth in this Complaint, is a violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), by Defendants Mid-Valley and SPLP. Mid-Valley as the owner, and SPLP as the operator of the MVPL, are each liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

**Third Claim for Relief**
**Injunctive Relief Under Section 301 and 309 of the CWA**

44. Paragraphs 1 through 16, and Paragraphs 23 through 43, are realleged and incorporated herein by reference.

45. The discharges described in this Complaint violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a). Defendants Mid-Valley and SPLP are subject to injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), to undertake appropriate action to prevent further spills from the MVPL into waters of the United States, so as to achieve compliance with the CWA.

**Fourth Claim for Relief**
**Cabinet Penalty for Kentucky Discharge**

46. Paragraphs 1 through 8, Paragraphs 17 through 22, and Paragraphs 31 through 39, are realleged and incorporated herein by reference.

47. The discharge that occurred on or about January 26, 2005, as set forth in this Complaint, by Defendants Mid-Valley and SPLP, constitutes a violation of KRS 224.70-110. KRS 224.99-010 authorizes civil penalties not to exceed $25,000 per day for each violation.

**Fifth Claim for Relief**
**Cabinet Penalty for Failure to Immediately Notify**

48. Paragraphs 1 through 8, Paragraphs 17 through 22, and Paragraphs 31 through 39, are realleged and incorporated herein by reference.

49. The failure by Mid-Valley and SPLP to immediately notify the Cabinet's Division of Water about the discharge of a reportable quantity of oil that occurred on or about January 26, 2005, as set forth in this Complaint, constitutes a violation of KRS 224.01-400(11) and 401 KAR 5:015 Section 2. KRS 224.99-010 authorizes civil penalties not to exceed $25,000 per day for each violation.

**Sixth Claim for Relief**
**Cabinet Response Costs through March 15, 2006**

50. Paragraphs 1 through 8, Paragraphs 17 through 22, and Paragraphs 31 through 39, are

realleged and incorporated herein by reference.

51. Pursuant to KRS 224.01-400(15), Mid-Valley and SPLP are liable to the Commonwealth for the Cabinet's response costs incurred in responding to the discharge that occurred on or about January 26, 2005, and which were billed through March 15, 2006, in the amount of $120,478.63.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Impose civil penalties under the CWA on (1) Mid-Valley and (2) Sun, in an amount per each Defendant up to $1,100 per barrel of oil discharged for the Louisiana oil spill alleged in this Complaint;

B. Impose civil penalties under the CWA on (1) Mid-Valley, and (2) SPLP, in an amount per each Defendant up to $1,100 per barrel of oil discharged for the Kentucky oil spill alleged in this Complaint;

C. Issue an order pursuant to the CWA requiring Mid-Valley and SPLP to take all appropriate action to prevent future discharges of oil from the MVPL into navigable waters of the United States;

D. Impose civil penalties against Mid-Valley and SPLP under KRS 224.99-010 for violations of Kentucky statutes and regulations pled herein;

E. Require Mid-Valley and SPLP to pay the Cabinet's response costs incurred and billed through March 15, 2006 in the amount of $120,478.63; and

F. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Valerie K Mann
VALERIE K. MANN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: 202/616-8756
Fax: 202/514-2583

Of Counsel:

Joan Redleaf Durbin
U.S. EPA Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960
phone: 404/562-9544

Edwin Quinones
U.S. EPA Region 6
1445 Ross Avenue Suite 1200
Dallas, TX 75202-2733
phone: 214/665-8035

Cheryl T. Rose
U.S. EPA Headquarters
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
phone: 202/564-4136

AMUL R. THUR
United States Attorney
Eastern District of Kentucky

ANDREW SPARKS
Assistant United States Attorney
Eastern District of Kentucky
110 West Vine Street, Suite 400
Lexington, KY 40507-1671
Phone: 859/233-2661

FOR PLAINTIFF THE COMMONWEALTH OF KENTUCKY,
ENVIRONMENTAL & PUBLIC PROTECTION CABINET:

Mary Stephens
MARY STEPHENS
Office of Legal Services
5th Floor, Capital Plaza Tower
Frankfort, KY 40601
Tel: 502/564-5576