EASTERN DISTRICT of KENTUCKY

TENDERED

IN THE UNITED STATES DISTRICT COURT FOR

DATE: 8/15/06

LESLIE G. WHITMER

CLERK, U.S. DISTRICT COURT

**EASTERN DISTRICT OF KENTUCKY**
**FRANKFORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and COMMONWEALTH OF KENTUCKY, ENVIRONMENTAL AND PUBLIC PROTECTION CABINET, | ) ) ) ) ) |
| Plaintiffs, | ) ) Civil Action No.06-cv-57 KKC |
| v. | ) ) ) |
| MID-VALLEY PIPELINE COMPANY, SUNOCO PIPELINE L.P., and SUN PIPE LINE COMPANY, | ) ) ) ) |
| Defendants. | ) ) ) |

## CONSENT DECREE

A.     WHEREAS, Plaintiff the United States of America, on behalf of the United States

Environmental Protection Agency (EPA), and Plaintiff the Commonwealth of Kentucky

Environmental and Public Protection Cabinet ("the Cabinet"), an agency of the Commonwealth

authorized to enforce environmental protection statutes and regulations, have filed a Complaint

in this action concurrently with this Consent Decree, alleging that Defendants Mid-Valley

Pipeline Company ("Mid-Valley") and Sunoco Pipeline L.P. ("SPLP") are civilly liable for

violations of Kentucky Revised Statutes (KRS), related Kentucky Administrative Regulations

(KAR) and the Clean Water Act (CWA), 33 U.S.C. §1251 et seq., with respect to the January

2005 release of 6,251 barrels of crude oil from the Mid-Valley Pipeline (MVPL), in Owen

County, Kentucky into the Kentucky and Ohio Rivers, and adjoining shorelines ("Kentucky

Release"). The immediate cause of the release was a girth weld failure in the pipeline.

B. WHEREAS, the United States further alleges in the Complaint that Defendants Mid-Valley and Sun Pipe Line Company ("Sun") are civilly liable for violations of the CWA, 33 U.S.C. §1251 et seq., with respect to the November 2000 release of 1,500 barrels of crude oil from the MVPL in Claiborne Parish, Louisiana into Campit Lake (also known as Clampit Pond), an unnamed creek, and adjoining shorelines ("Louisiana Release"). The immediate cause of the release was a failure in the pipeline caused by external stress corrosion-cracking ("SCC").

C. WHEREAS, pursuant to this Consent Decree, with respect to the Kentucky Release, Mid-Valley and SPLP (collectively, "Kentucky Defendants") will pay a civil penalty of \$2.57 million, plus interest on the portion of the penalty paid to the United States, pay for a state environmental project at a cost of \$230,000, perform certain projects related to enhancement of spill response preparation, pay billed response costs up to March 15, 2006 to the Cabinet, and satisfy all other terms of this Consent Decree. In addition, with respect to the Louisiana Release, Mid-Valley and Sun (collectively, "Louisiana Defendants") will pay a federal civil penalty of \$300,000 plus interest.

D. WHEREAS, with respect to the Kentucky Release, Kentucky Defendants have paid removal costs billed to date by the United States Coast Guard, specifically bill number E05405-001-06 issued on November 15, 2005, for \$234,651.66.

E. WHEREAS, with respect to the Louisiana Release, Louisiana Defendants have paid removal costs billed to date by the United States Coast Guard, specifically bill number N01063-001-02, issued November 9, 2001, for \$26,752.63.

F. WHEREAS, Defendants have taken these steps to decrease the likelihood of other such releases:

-2-

(1) directionally drilled and replaced the MVPL crossing of the Kentucky River;

(2) X-rayed the adjoining welds on either side of the replacement pipe at the Kentucky River crossing to show that there was no indication of defects likely to cause another failure;

(3) ran an additional in-line investigatory (ILI) tool (Transverse Flux Leakage tool) in the Haynesville to Stevenson segment of the MVPL in Louisiana to inspect the line for evidence of axial anomalies consistent with SCC; engaged a consultant to develop a predictive model of potential SCC anomalies; and based on the TFL data, the predictive model and the consultant's study, performed 39 investigatory digs; and

(4) engaged a consultant to conduct a comprehensive review of the entire MVPL to screen for SCC susceptibility, by analyzing certain factors and conditions for SCC, including age, operating stress levels, proximity to pump stations, results of close interval surveys, ILI data, and soil characteristics.

G. WHEREAS, Kentucky Defendants have revised their notification procedures in their spill response plan to improve the promptness of notification to federal and state authorities.

H. WHEREAS, Defendants do not admit any liability to the United States or the Cabinet arising out of the transactions or occurrences alleged in the Complaint.

I. WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before taking testimony and without the adjudication or

-3-

admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 1321(n), and over the subject matter of the Cabinet's claims relating to water quality under KRS Chapter 224, pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction) because the Cabinet's claims are so related to the federal claims that they form part of the same case or controversy. The Court has personal jurisdiction over the Parties to this Consent Decree. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and ( c), and 1395(a), because the Kentucky Release alleged in the Complaint occurred in, and Mid-Valley and SPLP conduct business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree or such action and over Defendants, and consent to venue in this judicial district.

2.    Notice of the commencement of this action has been given to the Commonwealth of Kentucky and the State of Louisiana, as required by Section 309(b) of the Act, 33 U.S.C. § 1319(b).

## II. APPLICABILITY

3.    The obligations of this Consent Decree apply to and are binding upon the United States and the Cabinet, and upon Defendants, and any successors, assigns or other entities or persons otherwise bound by law.

-4-

4. No transfer of ownership or operation of the Facility, or any portion thereof, prior to the completion of the Defendants' obligations hereunder, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented. Any transfer of ownership or operation of the portion of the Facility within Kentucky to any other person must be conditioned upon the transferee's agreement to undertake the obligations required by Section VI (ICS Training and Additional Drill) and Section VIII (Reporting Requirements) of this Decree, as provided in a written agreement between any Defendant and the proposed transferee, enforceable by the United States and the Cabinet as third-party beneficiaries of such agreement. At least thirty (30) days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 4, to the United States Department of Justice, and to the Cabinet in accordance with Section XIV of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5. Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree. Defendants shall condition any contract to perform such work upon performance of the work in conformity with the terms of this Consent Decree.

6. In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

-5-

## III. DEFINITIONS

7.      Terms used in this Consent Decree that are defined or used in the CWA, or in regulations promulgated thereunder, shall have the meanings assigned to them in such statute or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Cabinet" shall mean the Commonwealth of Kentucky Environmental and Public Protection Cabinet, an agency of the Commonwealth, or its successor.

b.      "Complaint" shall mean the complaint filed by Plaintiffs in this action, unless noted otherwise.

c.      "Consent Decree" or "Decree" shall mean this Decree.

d.      "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

e.      "Defendants" shall mean Mid-Valley, Sun, and SPLP.

f.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

g.      "Facility" shall mean the Mid-Valley Pipeline (MVPL), which currently runs from Longview, Texas to Lima, Ohio, and traverses the states of Louisiana, Arkansas, Mississippi, Tennessee, and Kentucky.

h.      "Incident Command System" (ICS) is a standardized on-scene emergency management construct designed to provide for the adoption of an integrated

-6-

organizational structure. ICS is the combination of facilities, equipment, personnel, procedures, and communications operating within a common organizational structure.

i.      "Incident Commander" shall mean the individual responsible for all incident activities, including the development of strategies and tactics and the ordering and the release of resources. The Incident Commander has overall authority and responsibility for conducting incident operations and is responsible for the management of all incident operations at the incident site.

j.      "Kentucky Defendants" shall mean Mid-Valley and SPLP.

k.      "Louisiana Defendants" shall mean Mid-Valley and Sun.

l.      "Natural Resources" shall have the meaning set forth in OPA § 1001(20), 33 U.S.C. § 2701(20), and includes land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States or a state.

m.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

n.      "Parties" shall mean the United States, the Cabinet, Mid-Valley, Sun, and SPLP.

o.      "Plaintiffs" shall mean the United States and the Cabinet.

p.      "Releases" shall mean the November 2000 release of 1,500 barrels of crude oil from the MVPL in Claiborne Parish, Louisiana, into Campit Lake and an unnamed creek, and adjoining shorelines ("Louisiana Release"), and the January 2005 release of 6,251 barrels of crude oil from the MVPL in Owen County, Kentucky into the Kentucky and Ohio

-7-

Rivers, and adjoining shorelines ("Kentucky Release").

        q.      "Section" shall mean a portion of this Decree identified by a Roman numeral.

        r.      "State" shall mean the Commonwealth of Kentucky.

        s.      "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTIES

        8.      Within thirty (30) days after the Effective Date of this Consent Decree, Defendants shall pay a civil penalty of $2,870,000 (plus interest on the portion of the penalty paid to the United States), to the United States and the Cabinet as follows:

        a.      Kentucky Defendants shall pay a civil penalty of $2,570,000, plus interest on the portion of the penalty paid to the United States, by paying:

        (1)      $1.4 million, plus interest accruing from the date on which this Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961, as of the date of lodging, to the United States. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendants, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Kentucky. Such monies are to be deposited in the Oil Spill Liability Trust Fund. The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-07957, and U.S. Coast Guard reference number FPN E05405, and shall specify that the payment is made toward

-8-

CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund

pursuant to 33 U.S.C. § 1321(s), § 4304 of Pub. L. No. 101-380, and 26 U.S.C.

§ 9509(b)(8). Any funds received after 11:00 a.m. Eastern Time shall be credited

on the next business day. At the time of payment, Kentucky Defendants shall

simultaneously send written notice of payment and a copy of any transmittal

documentation to Plaintiffs in accordance with Section XIV of this Decree

(Notices) and to:

LT Carolyn Leonard-Cho
National Pollution Funds Center
4200 Wilson Boulevard, Suite 1000
Arlington, Virginia 22203-1804

Commander Thomas Beistle
United States Coast Guard
Office of Claims and Litigation
2100 Second Street, S.W.
Washington, D.C. 20593-0001

(2)    $1.17 million to the Cabinet. Payment of all sums due to the

Cabinet shall be by cashier's check, certified check, or money order, payable to the

Kentucky State Treasurer, and shall be sent to Director, Division of Enforcement,

Department for Environmental Protection, 14 Reilly Road, Frankfort, KY 40601.

At the time of payment, Kentucky Defendants shall simultaneously send written

notice of payment and a copy of any transmittal documentation (which shall

reference the Civil Action Number assigned to this case) to Plaintiffs in accordance

with Section XIV of this Decree (Notices).

b.    Louisiana Defendants shall pay $300,000, plus interest accruing

-9-

from the date on which this Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961, as of the date of lodging, to the United States in the manner described in Paragraph 8(a)(1) above (except substituting FPN N01063).

9.    Defendants shall not deduct the civil penalties paid under this Section in calculating federal income tax.

## V. STATE PAST RESPONSE COSTS

10.    Within thirty (30) days after the Effective Date of this Consent Decree, Kentucky Defendants shall reimburse the Cabinet $120,478.63 for costs incurred prior to March 15, 2006 in response to the Kentucky Release. Payments shall be made by certified check, made payable to the Kentucky State Treasurer and shall be sent to Director, Division of Enforcement, Department for Environmental Protection, 14 Reilly Road, Frankfort, KY 40601. At the time of payment, Kentucky Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation (which shall reference the Civil Action Number assigned to this case) to Plaintiffs in accordance with Section XIV of this Decree (Notices).

## VI. ICS TRAINING AND ADDITIONAL DRILL

11.    Kentucky Defendants shall provide Incident Command System (ICS) training to the 400 level (ICS Advanced) no later than 90 days following the Effective Date, to its personnel who have or will have the responsibility to serve as an incident commander or on the incident management team (IMT) during an emergency on the MVPL in Kentucky, and will ensure all such personnel obtain a certificate demonstrating capability to the ICS 400 level. At a minimum, Kentucky Defendants shall train to the ICS 400 level at least one IMT comprised of its personnel by 90 days following the Effective Date. Kentucky Defendants shall ensure that any of

-10-

its personnel, contractors, consultants or other agents have a valid certificate demonstrating capability to the ICS 400 level in place at the time of performing the incident commander or team responsibility during an emergency on the MVPL.

12.     In addition to drills delineated in Kentucky Defendants' response plan as required by 49 C.F.R. Part 194, Kentucky Defendants shall conduct an unannounced drill and exercise ("Drill") by 180 days following the Effective Date. The Drill shall follow the most current National Preparedness for Response Exercise Program (PREP) guidelines. The Drill shall take place at a MVPL water crossing in Kentucky chosen by EPA. Kentucky Defendants and EPA will plan the Drill prior to its announcement. EPA will announce the time, place, and details of the hypothetical major oil release of greater than 10,000 gallons of crude oil into waters of the United States. EPA, State and local responders may observe and participate in the Drill. The Drill will include both a tabletop exercise and the actual deployment of equipment, as follows:

a.     Kentucky Defendants will conduct a tabletop exercise in response to the hypothetical spill, including configuring an incident management team (IMT) capable of responding to such a spill. One of the personnel dispatched to the scene initially will be designated as the Incident Commander, and will produce a completed ICS Form 201 for briefing any incoming Federal and State On-Scene Coordinators. Kentucky Defendant personnel will provide a presentation on the transition from the initial deployment of company-owned and contracted resources to the level required for addressing the specifics of the major oil release, including the operational elements proposed to contain and remove the oil as well as the organization approach to be employed in directing response actions.

b.     Kentucky Defendants will conduct an unannounced equipment deployment

-11-

exercise that tests the ability of the Oil Spill Removal Organization (OSRO) to respond within the time frames specified in the facility response plan. The deployment, which will include simultaneous multiple field locations, will be evaluated with respect to the ability of Kentucky Defendants to supervise the contractors in the field, following the directions specified in an ICS Form 204.

13.     Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section X of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VII. STATE ENVIRONMENTAL PROJECT

14.     No later than thirty (30) days after the Effective Date of this Agreement, Kentucky Defendants will make a contribution in the amount of $230,000 to a non-profit organization dedicated to improving the environment of Kentucky, as directed by the Cabinet.

15.     At the time of payment, Kentucky Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation (which should reference the Civil Action Number assigned to this case) to Plaintiffs in accordance with Section XIV of this Decree (Notices).

-12-

## VIII. REPORTING REQUIREMENTS

16. Kentucky Defendants shall submit the following reports in accordance with Section XIV of this Decree (Notices):

a. Within sixty (60) days after the Drill required under Paragraph 12, a report evaluating the performance of the Kentucky Defendants, including all its contractors and consultants, during the Drill, including problems encountered, together with implemented or proposed solutions.

b. By 100 days following the Effective Date, Kentucky Defendants shall provide to EPA the ICS 400 certifications of the personnel required to be trained under Paragraph 11.

17. Each report submitted by Defendants under this Section shall be signed by a responsible corporate officer of the submitting party and include the following certification:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein. I further certify, based on my personal knowledge, or to the best of my knowledge based on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

## IX. STIPULATED PENALTIES

18. If Defendants fail to make the payments required under Section IV (Civil Penalties) or Section V (State Past Response Costs) when due, Defendants shall pay a stipulated penalty of fifteen hundred dollars ($1,500) to each Plaintiff not paid in full, per day for each day

-13-

that the payment is late. Late payment of the civil penalty shall be made in accordance with payment instructions in Section IV (Civil Penalties), above. Stipulated Penalties shall be paid in accordance with Paragraph 24, below. All transmittal correspondence shall state that any such payment is for late payment of the settlement payments due under this Decree, or for Stipulated Penalties for late payment, as applicable. Payments to the United States of stipulated penalties shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-07957, and shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury pursuant to 31 U.S.C. § 3302. Payments to the Cabinet of stipulated penalties shall reference the Civil Action Number assigned to this case and that the payment is for stipulated penalties, and shall be made in compliance with Section V of this Decree.

19. If Kentucky Defendants fail to make the payments required under Section VII (State Environmental Project) when due, they shall pay a stipulated penalty of five hundred dollars ($500) to the Cabinet, per day for each day that the payment is late.

20. Defendants shall be liable for Stipulated Penalties to the United States and the Cabinet for all other violations of this Consent Decree, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any obligations under Section VI or VIII, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

| Penalty Per Violation Per Day: | Period of Noncompliance: |
| --- | --- |
| $500 | 1st through 14th day |
| $800 | 15th through 30th day |

-14-

$1,500                          31st day and beyond

21.     Stipulated Penalties under this Section shall begin to accrue on the day after performance is due, and shall continue to accrue until performance is satisfactorily completed. Stipulated Penalties shall accrue simultaneously for separate violations of this Consent Decree. Defendants shall pay any Stipulated Penalty within thirty (30) days of receiving a written demand. The United States, or the Cabinet, or both may seek Stipulated Penalties under this Section. Where both Plaintiffs seek Stipulated Penalties for the same violation of this Consent Decree, Defendants shall pay fifty (50) percent to the United States and fifty (50) percent to the Cabinet. Where only one Plaintiff demands Stipulated Penalties for a violation, and the other Plaintiff does not join in the demand within thirty (30) days of receiving the demand, or timely joins in the demand but subsequently elects to waive or reduce Stipulated Penalties for that violation, Defendants shall pay the Stipulated Penalties due for the violation to the Plaintiff making the initial demand, less any amount paid to the other Plaintiff. The determination by one Plaintiff not to seek Stipulated Penalties shall not preclude the other Plaintiff from seeking Stipulated Penalties.

22.     The United States or the Cabinet may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due that sovereign under this Consent Decree.

23.     Stipulated Penalties shall continue to accrue as provided in Paragraph 21, above, during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

a. If the dispute is resolved by agreement, Defendants shall pay accrued penalties determined to be owing, together with interest, to Plaintiffs within thirty (30) days of the effective date of that agreement;

b. If the dispute is submitted to the Court and Plaintiffs prevail in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) days of receiving the Court's decision or order, except as provided in Subparagraph c, below;

c. If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) days of receiving the final appellate court decision.

24. Defendants shall, as directed by the United States in its demand, pay Stipulated Penalties owing to the United States by EFT or by certified or cashier's check in the amount due, payable to the U.S. Department of Justice, referencing the civil action number assigned to this case and DOJ Number 90-5-1-1-07957, and delivered to the office of the United States Attorney, Eastern District of Kentucky, to be deposited in the U.S. Treasury. If payment is due to the Cabinet under this Section, payment shall be made by certified check made payable to the Kentucky State Treasurer, referencing the civil action number assigned to this case, and shall be sent to Director, Division of Enforcement, Department for Environmental Protection, 14 Reilly Road, Frankfort, KY 40601.

25. Defendants shall not deduct Stipulated Penalties paid under this Section in calculating federal income tax.

26. If Defendants fail to pay Stipulated Penalties according to the terms of this

-16-

Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

27.   Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the Stipulated Penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to Plaintiffs for Defendants' violation of this Consent Decree or applicable law.

## X. FORCE MAJEURE

28.   A "force majeure event" is any event beyond the control of Defendants, their contractors, or any entity controlled by any Defendant that delays the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include any Defendant's financial inability to perform any obligation under this Consent Decree.

29.   Defendants shall provide notice verbally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time any Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event. Defendants shall also provide written notice, as provided in Section XIV of this Consent Decree (Notices), within seven days of the time any Defendant first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); Defendants' past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and Defendants' rationale for attributing any delay to a

-17-

force majeure event. Failure to provide verbal and written notice as required by this Paragraph shall preclude Defendants from asserting any claim of force majeure.

30. If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendants to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XVII of this Consent Decree (Modification) and is not a material change under that Section.

31. If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendants, the United States' position shall be binding, unless Defendants invoke Dispute Resolution under Section XI of this Consent Decree. In any such dispute, Defendants bear the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event, that Defendants gave the notice required by Paragraph 29, that the force majeure event caused any delay Defendants claim was attributable to that event, and that Defendants exercised best efforts to prevent or minimize any delay caused by the event.

## XI. DISPUTE RESOLUTION

32. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, such procedures shall not apply to actions by Plaintiffs to enforce obligations of Defendants under this Consent Decree that have not been

-18-

disputed in accordance with this Section.

33. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations between Plaintiffs and Defendants. The dispute shall be considered to have arisen when Defendants send a written notice of dispute, as provided in Section XIV of this Decree (Notices). Such notice of dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty-one (21) days from the date the dispute arises, unless that period is modified by written agreement. If informal negotiations are unsuccessful, then Plaintiffs' position shall control unless Defendants file with the Court a petition to resolve the dispute within thirty (30) days after the conclusion of the informal negotiation period. In any dispute under this Paragraph, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and the CWA, and that Defendants are entitled to relief under applicable law.

34. The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, not directly in dispute. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 23, above. If Defendants do not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

35. This Consent Decree resolves the civil claims of the United States and the Cabinet for the violations alleged in the Complaint filed in this action.

36. Plaintiffs reserve all legal and equitable remedies available to enforce the

-19-

provisions of this Consent Decree. This Consent Decree shall not be construed to prevent or limit the rights of the United States or the Cabinet to obtain penalties or injunctive relief under the CWA, or under other federal or state laws, regulations, or permit conditions, except as expressly specified herein.

37.     In any subsequent administrative or judicial proceeding reserved herein and initiated by the United States or the Cabinet for unreimbursed costs, damages, remediation, or other appropriate relief relating to the MVPL or Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the Cabinet in the subsequent proceeding were or should have been brought in the instant case. Except as provided herein, each of the Defendants reserves its defenses to any such action.

38.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits. Plaintiffs do not, by their consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, or with any other provisions of federal, state, or local laws, regulations, or permits.

39.     This Consent Decree does not limit or affect the rights of Defendants or of the United States or the Cabinet against any third parties, not party to this Consent Decree, nor

-20-

does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

40.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

41.    Defendants hereby covenant not to sue and agree not to assert any claims related to the Releases, or response activities in connection with the Releases, against the United States or the Commonwealth of Kentucky pursuant to the CWA, OPA, or any other federal law, state law, or regulation including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, or pursuant to any other provision of law.

42.    This Consent Decree is without prejudice to the rights of the United States or the Cabinet against Defendants with respect to all matters other than those expressly specified in Paragraph 35 including, but not limited to, the following:

> a.    claims based on a failure of Defendants to meet a requirement of this Consent Decree;
>
> b.    any and all criminal liability;
>
> c.    past, present, or future releases, discharges, or spills of oil other than the Releases described in the Complaint;
>
> d.    reimbursement for any disbursements from the federal Oil Spill Liability Trust Fund arising from the Releases or any other related incident, pursuant to OPA, including for subrogated claims under Section 1015 of OPA, 33 U.S.C. § 2715;
>
> e.    any and all removal and monitoring costs incurred by the Cabinet

-21-

after March 15, 2006 in connection with the Kentucky Release;

    f.     liability for natural resources damages; and

    g.    remediation.

## XIII. COSTS

43.    Subject to Section V (State Past Response Costs), and Paragraph 42(e), the

Parties shall bear their own costs of this action, including attorneys' fees.

## XIV. NOTICES

44.    Unless otherwise specified herein, whenever notifications, submissions,

reports or communications are required by this Consent Decree, they shall be made in writing and

addressed to all parties as follows:

As to the United States:
  As to the U.S. Department of Justice:
      Chief (re: DJ # 90-5-1-1-07957)
      Environmental Enforcement Section
      Environment and Natural Resources Division
      U.S. Department of Justice
      P.O. Box 7611
      Washington, D.C. 20044-7611

As to EPA Region 4:
      Joan Redleaf Durbin
      Associate Regional Counsel
      U.S. Environmental Protection Agency, Region 4
      Atlanta Federal Center
      61 Forsyth Street, S.W.
      Atlanta, Georgia 30303
To receive verbal notification as required by this Decree: 404/562-9544

As to EPA Region 6:
      Edwin Quinones
      Assistant Regional Counsel
      U.S. Environmental Protection Agency, Region 6
      1445 Ross Avenue, Suite 1200, 6RC-S
      Dallas, Texas 75202-2733

As to the Cabinet:

>Director of the Division of Enforcement
>Department for Environmental Protection
>14 Reilly Road
>Frankfort, Kentucky 40601

As to Defendants:

>Bruce D. Davis, Jr.
>General Counsel
>Sunoco Logistics Partners L.P.
>1735 Market Street, 29th floor
>Philadelphia, PA 19103
>
>Kevin A. Gaynor
>Vinson & Elkins LLP
>Suite 600
>1455 Pennsylvania Avenue, NW
>Washington, DC 20044

45. Any Party may, by written notice to the other Parties, change its designated

notice recipient or notice address provided above.

46. Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XV. EFFECTIVE DATE

47. The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court.

## XVI. RETENTION OF JURISDICTION

48. The Court shall retain jurisdiction over this case until termination of this

Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVII (Modification), or

-23-

effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

49. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Decree, it shall be effective only upon approval by the Court.

## XVIII. TERMINATION

50. After Defendants have completed performance of their obligations required by this Decree, including payments under Sections IV and V of this Decree and any accrued Stipulated Penalties under Section IX, as well as the State Environmental Project under Section VII, and ICS Training and Additional Drill under Section VI, and Reporting under Section VIII, Defendants may submit to Plaintiffs in writing a request for termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

51. If the Plaintiffs agree that the Decree may be terminated, the United States shall file a motion or a joint stipulation for termination of the Decree.

52. If the Plaintiffs do not agree that the Decree may be terminated, the Defendants may invoke Dispute Resolution under Section XI of this Decree. However, Defendants shall not seek Dispute Resolution of any dispute, under Section XI, until ninety (90) days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

53. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment, consistent with the procedures set forth in 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the

-24-

comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree. Defendants consent to entry of this Consent Decree without further notice.

## XX. SIGNATORIES/SERVICE

54. The Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, on behalf of the United States, and each undersigned representative of Defendants, and the Deputy Secretary of the Cabinet, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Decree.

55. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

56. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION

57. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether verbal or written. No other document, nor any representation, inducement, agreement, understanding, or promise,

-25-

comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree. Defendants consent to entry of this Consent Decree without further notice.

## XX. SIGNATORIES/SERVICE

54. The Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, on behalf of the United States, and each undersigned representative of Defendants, and the Deputy Secretary of the Cabinet, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Decree.

55. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

56. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION

57. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether verbal or written. No other document, nor any representation, inducement, agreement, understanding, or promise,

-25-

comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree. Defendants consent to entry of this Consent Decree without further notice.

## XX. SIGNATORIES/SERVICE

54. The Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, on behalf of the United States, and each undersigned representative of Defendants, and the Deputy Secretary of the Cabinet, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Decree.

55. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

56. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION

57. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether verbal or written. No other document, nor any representation, inducement, agreement, understanding, or promise,

-25-

constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII. FINAL JUDGMENT

58.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the United States, the Cabinet, and Defendants.

59.     Upon entry of this Consent Decree as a final judgment of the Court, the administrative complaint filed by the Cabinet against Defendant, Mid-Valley Pipeline Company, File No. 32837-039, shall be dismissed, without prejudice except as to issues resolved by this Consent Decree, each party to bear its own costs of the administrative action.

60.     The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment.

This Consent Decree is dated and entered this 2 day of November 2006.

UNITED STATES DISTRICT JUDGE
Eastern District of Kentucky

-26-

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

VALERIE K. MANN
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: 202/616-8756
Fax: 202/514-2583

-27-

Amul R. Thapar
United States Attorney
Eastern District of Kentucky

ANDREW SPARKS
Assistant United States Attorney
Eastern District of Kentucky
110 West Vine Street, Suite 400
Lexington, KY 40507-1671
Tel: 859/233-2661

-28-

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

J. I. PALMER, JR.
Regional Administrator
U.S. Environmental Protection Agency, Region 4
Atlanta, Georgia

JOAN REDLEAF DURBIN
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4
Atlanta Federal Center
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

-29-

RICHARD E. GREENE
Regional Administrator
U.S. Environmental Protection Agency, Region 6
Dallas, Texas

EDWIN QUINONES
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200
Dallas, Texas 75202-2733

-30-

*Granta Y. Nakay*

GRANTA Y. NAKAYAMA
Assistant Administrator for Office of
Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Washington, D.C.

*Chuy l J. Rose*

CHERYL T. ROSE
Senior Attorney
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

**FOR PLAINTIFF THE COMMONWEALTH OF KENTUCKY, ENVIRONMENTAL &
PUBLIC PROTECTION CABINET:**

JOHN W. CLAY, Deputy Secretary

MARY STEPHENS
Office of Legal Services
5th Floor, Capital Plaza Tower
Frankfort, KY 40601
Tel: 502/564-5576

-32-

**FOR DEFENDANTS**

MID-VALLEY PIPELINE COMPANY

By: _Richard G. Taylor_
Richard G. Taylor, President

SUNOCO PIPELINE L.P.

By: Sunoco Logistics Partners Operations GP LLC,
its general partner

By: _Deborah M. Fretz_
Deborah M. Fretz, President

SUN PIPE LINE COMPANY

By: _John J. Wolchko_
John J. Wolchko, Vice President

-33-